It pleases the court Lawrence Wolfing on behalf of Gloria Ruiz who is present, I'm not sorry, in old habits, this this is a social security disability case. Ruiz applied for benefits, she has presented evidence that the government does not object to, that she has limited to occasional use of the hands, the ALJ found that she could frequently use her hands, and found identified work that required frequent use of the hands. The government and the district court both agree that the ALJ committed error. The question in this case is whether it's harmless. Harmless error is based on the vocational experts identification of two occupations, counter clerk and bakery worker, representing approximately 50,000 jobs, that the ALJ did not accept. And this court has been very clear in extending and defining the Chenery Doctrine that the court reviews the decision that was actually made. And the decision that was actually made in this case did not identify the two occupations that the government contends satisfy the Commissioner's burden of proof at step five. Counsel, I think you've accurately described the problem in this case. What I'm struggling with is this. If the judge, the ALJ, had cited the other expert, we wouldn't be here, would we? There would be no problem. The need to identify the occupations would have alerted Ruiz's counsel before the appeals counsel that he needed to address those occupations. And as the Supreme Court recently stated in DHS versus Regents, the articulation standards are not a meaningless exercise. With respect, I do get that. I do understand that what I'm struggling with is this. I see your point under our case law why it seems that we have to remand this. But it seems like a wholly worthless exercise. Because all that's going to happen in my judgment is we're going to send it back. The ALJ said, whoop, I made a mistake. I should have credited this expert. And this is what it is. And I reaffirm what I said before. End of story. The district court agrees. And what have we accomplished? Ruiz would have the opportunity that she should have had at the appeals counsel, the obligation that she should have had at the appeals counsel, to present rebuttal evidence to the vocational expert's testimony. As this court stated in Shaibi versus Berryhill, claimants are uniquely unprepared to respond to vocational expert testimony. Claimants are always surprised by the content of vocational expert testimony at the time of hearing. And so if the court remands this case, Ruiz could point to, for instance, the 11th Circuit decision in Good versus Berryhill in August of last year that called into question this bakery worker occupation, that the numbers of jobs cited here and in that case are grossly exaggerated. It calls into question, gives her the obligation to avoid forfeiture and waiver that's been described in Mantel and Shaibi. Well, I take your point. You wouldn't want to rebut that. But just anecdotally, I practiced law for a long time, been on the court for a while. And over the years, I've seen lots and lots and lots and lots of legal secretaries, and probably a quarter of them have Carpal Tunnel Syndrome. And sometimes they work pretty well, sometimes they don't, but it kind of comes and goes. And just on the basis of legal secretaries alone, there'd be a significant number of people who have this. I feel sorry for your client, don't get me wrong. I just wonder how, under the five-step program, how she qualifies with that particular disability. There are other disabilities that might be different, but Carpal Tunnel Syndrome is extremely common, extremely common for anybody that does typing. And of course, these days, with computers, we're all kind of stuck with that. What am I missing? Well, our desire to project our worldview onto what is happening that we've seen, anecdotally, onto the rest of the world is a dangerous game to play, Your Honor. The reason for that is that the legal secretaries that we've seen, both in the courtrooms or courtroom deputies, those are people that have significant educational advantages that Ruiz does not have. She's got a high school education. She's never done clerical work. She's never been a professional. She's never worked in an office. And the world of work, unskilled work, because being a legal secretary is pretty sophisticated work activity, the work that she's qualified to do is production work. It's manual labor. And people make their living with their back, their hands, or their brain. We get to sit here and exercise our brain. It doesn't matter if I have Carpal Tunnel Syndrome or not. Very few physical anomalies would stop me from practicing law. But Ruiz, at 54 and 11 months on the date of the ALJ decision, she doesn't have those advantages. She doesn't have the cognitive advantages that our legal secretaries have had. She doesn't have the cognitive advantages that our paralegals have had. She is relegated to unskilled manual labor. And the incidence of work with occasional use of the hands is rare as hen's teeth. And if the ALJ wanted to rely on that kind of testimony, the ALJ should have told. And the counsel for Ruiz said that there's, he misstated the record. He said that the ALJ didn't ask the question. The ALJ did ask the question. But the ALJ didn't cite the answer to that question, which would have re-alerted counsel, hey, not only do you need to address the findings that the ALJ has actually made, you need to address the alternate findings that the ALJ has made. And your Honor's been on the bench a long time, so the other judges on this panel, you know what alternate findings look like. And an ALJ is, it is not asking too much to list five occupations instead of three. It's not asking too much. It's an important procedural safeguard to arbitrary and capricious decision making. And I understand that your Honor's fear that we're just chasing our tail and she's going to go back and lose on remand. But you want that, Dan? I think I can win. Okay. I appreciate your explanation. And I hope you understand that in my comment, I understand that anecdotally I can't decide a case based on that. I was just thinking with you out loud and trying to get some sense of how useful this is to send it back. Not that that, that my view of what I've seen somehow controls this. It doesn't. I understand that. I totally understand that, your Honor. And I'm responding in kind. Indeed. And you did a nice job. Do you want to save the rest of your time for rebuttal or do you want to continue? I'll save the rest of my time for rebuttal. Very well. All right. Let's hear from the Commissioner's Council. Good morning, your Honors. I would first like to confirm that you're able to hear my audio. I am. I am. Thank you. Good morning. My name is Shea Bond and I am here representing the Commissioner of Social Security in this matter. Under the specific and unique facts of this case, harmless error does apply. And I would like to address just a couple of things a council has said during his opening argument. First is that the ALJ did not accept the clerk and the baker worker jobs. I think that's an inaccurate way to describe the ALJ's decision. It's suggesting that somehow the ALJ rejected those jobs, which did not happen here. The ALJ just didn't go on to discuss those additional jobs. So those jobs weren't rejected. But with respect, though, how do you get around Stout versus Commissioner of Social Security? Clearly, the ALJ here did not cite the correct expert if you're looking at part-time ability to use hands. Did he? Or she, rather? So the ALJ, referencing in Stout, the distinguishing characteristic is that in Stout we had the ALJ did not discuss at all statements from two family members who described mental limitations that when actually presented to the vocational expert, the expert actually said there was no competitive work available. So there were absolutely no jobs available. Here we have the very limitation that we're talking about, which is the limitation to being able to occasionally use hands or hand movements. When that limitation was presented to our vocational expert, that expert was able to identify over 50,000 jobs that would accommodate that limitation. So that's why we have, you know, under the harmless error precedent, the court is supposed to look at the specific facts of each case, the unique facts. And so typically when you see other cases, the evidence that wasn't discussed or was improperly rejected typically tends to support the claimant's disability claim. And then a conflict is created with the record, that there will be evidence in the record that says, well, you know, maybe the claimant isn't as bad off as she claims, and then we have other evidence that says, well, she is. With respect, I know you want to do this other point, but I don't want to leave Stout for a minute. My notes suggest that the court, and I'm now quoting Stout, is constrained to review the reasons the ALJ asserts and cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision. And that cites the SEC versus Chenery Corp., which is a Supreme Court case. In this case, it seems very clear the ALJ did not cite, did not credit the VE decision or recommendation with respect to partial use. How can we then under Stout rely on that? And I know the district court did, but that was a separate issue, but the agency did not, did it? So the ALJ didn't expressly cite those specific jobs, but I would go back to talking about, Chenery was talking about the grounds invoked by the agency. And so the grounds that the ALJ invoked here to find the claimant not disabled was at step five that we had vocational expert testimony that identified a significant number of jobs that would permit the work-related limitations that the claimant had. So those were the grounds for the decision. The fact that there are additional facts in the record that will support the grounds that the ALJ already discussed, I think gets to the heart of the application of harmless error here. So we don't have a situation where... Doesn't that flout what Stout says? Pardon? Doesn't that flout what Stout says? You seem to be saying that because the reference to partial, part-time use of the hands was in the record, even though it wasn't cited by the ALJ, that's enough. What do you rely upon for that? Do you rely on the base of what Stout said? Well, I'm going to rely on the other case of Marsh. So we cited that in our brief. So Marsh talks about the magnitude of the error committed. And so if we're looking at the magnitude of the error here in the ALJ's decision, if we didn't have an ALJ that completely ignored all of the vocational expert testimony, the ALJ did go on to discuss the Step 5 findings and invoke vocational expert testimony. So in a case like, say, Marsh, where the ALJ didn't talk about at all the limitations described by a treating physician, and it was deemed that the magnitude in that case was great because the limitations described could have impacted the disability determination, the finding of non-disability. And so there we have an ALJ that doesn't talk about at all this evidence. Here we had an ALJ that was referencing the specific category of evidence that is relevant at Step 5 and invoked vocational expert testimony. The fact that we have, there is absolutely nothing that contradicts our vocational expert's testimony that there are over 50,000 jobs that would accommodate this limitation to occasional hand movements. And so it really would be fruitless to send this case back under a harmless error concept just for the ALJ to add in the decision to say there are these additional jobs that the vocational expert has already identified. How do you address Mr. Ruffling's comment that if he goes back, he or whoever counsel might be at the ALJ level would bring on some evidence to try to undercut what the VEs had? And he cited, I don't remember what the name of the case was, but there was an 11th Circuit case that helped to undercut a particular group that I think was referred to in the VEs reference to partial use of the hand. Why isn't that an appropriate resolution to give Ruiz an opportunity to, if you will, counter what the VEs says on that point? My response to that is I'm citing the Shaib case, which we also cited in our brief. And so I'm going to disagree with I think how counsel has characterized Shaib as saying that it's recognizing that claimants have a difficult time presenting rebuttal evidence at a hearing. What Shaib actually said was that the claimant is required, if represented, and our claimant was represented at the hearing, that those issues about vocational expert testimony and job numbers must be raised at the hearing before the ALJ. And if that does not happen, then any issues challenging those job numbers in a federal court, it becomes forfeited. So when counsel is saying that if, you know, sending this back, that claimant would have the opportunity to address these vocational issues at a new hearing, that already happened. Claimant and the representative already had that opportunity, did not take advantage of it, and has forfeited a challenge then in federal court. Forfeited or waived? Pardon? Forfeited or waived? It's forfeited. So Shaib said that the issue is forfeited. So bringing that up now before a federal court, it's not permitted. And actually, this court has reinforced Shaib multiple times. In fact, I think it was just last week in an unpublished memorandum, the Hawking case, just reinforced it again. I believe Mr. Rothman perhaps was the attorney in that case. But this court had said that because the claimant's representative did not question the vocational expert at the hearing that she already had, that you cannot challenge the job numbers issue in federal court. It is forfeited. So for claimant now to say, well, my justification for saying that I should have a new hearing is that I could have an opportunity to question the vocational expert, that opportunity has already occurred. Plaintiff did not take advantage of that through her representative. So it would be an insufficient basis to overcome application of harmless error here. And again, I would just emphasize that we do have a unique situation here where the evidence at issue that was not discussed in the ALJ's decision, it actually fully supports a non-disability determination. And so if we're looking at the harmless error standards and whether that plaintiff can show prejudice. How do we know that the ALJ credits that testimony? How do we know? Pardon, could you repeat that, Your Honor? How do we know that the ALJ credits the testimony that you say we should rely on here? How do we know that? How do we know that the ALJ would? Yeah. How do we know that? Because in this circuit, 25,000 jobs is sufficient to establish a significant number of jobs. And we have a vocational expert who has identified over twice that number that would accommodate the limitation to occasional hand movement. But you're writing the ALJ out of this process. Well, no. Because when this court is looking for harmless error to see if we're looking at this evidence, would it have made a difference to the disability outcome? Because we have such an overwhelming and uncontested vocational expert testimony, establishing that there is over twice the number of jobs that this court has already concluded would be a significant number. There is, and I believe this is the language that's actually in stout. It says, would any reasonable ALJ come to a different disability conclusion? And so the answer here would be no. I don't see any reasonable ALJ viewing our existing vocational expert's testimony and saying, well, I'm not going to credit that. It's just there is nothing suggesting that that testimony is incorrect, inaccurate, it was uncontradicted. When you look at the vocational expert's existing testimony, she gave a very thorough explanation for why she identified the counterclerk and bakery worker jobs. Because she said, well, because of these specific limitations to occasional hand movements, I have to erode the job base, and here's how I did it. So we have a very thorough analysis by the ALJ expressly in response to the question posed by the vocational expert, assessing the, or imposing the occasional limitation on hand movements. There is nothing to suggest. We have now gone over time. Let me ask my colleague, do either of you have additional questions for the government? No. Okay, let's give Mr. Rothblatt a chance to rebut. You have a little bit of time left. Thank you, Your Honor. Shaibi says, we recognize that a claimant will rarely, if ever, be in a position to anticipate the particular occupations a V.E. might list and the corresponding job numbers, which the V.E. might testify to at the hearing. That's why it's important to list the occupations in the actual ALJ decision, and twice the Supreme Court last term reversed agency determinations because the articulations were not sufficient. And I recognize that DHS versus Regents and Department of Commerce versus New York were dealing with macro decision making, but the need for articulation in the macro also applies in the micro. We see that in the entirety of the Chenery Doctrine and its progeny. And so for that reason, Your Honor, please, the court, this case needs to go back. The decision is flawed. I want to ask you a question. She said that you have waived or forfeited any challenge to the V.E. at this point. And you can't do it on remand. And you say you can. I can on remand because the application is refloated. The evidentiary record is reopened. And even though Stacy versus Colvin says that the rule of mandate applies in Social Security cases, Stacy also relaxes the rule of mandate on new and material evidence. And in that case, it was vocational expert or the claimant's testimony about what he actually did on the job. And in this case, Ruiz would get the opportunity to present the rebuttal evidence that she could have or would have presented at the appeals council, had she been warned that this was the basis of the ALJ decision. What happens between the ALJ decision and the appeals council? Because appeals council just reads like the same thing, same mistakes as the ALJ. But what opportunity is there to fix things before the appeals council? Well, the five day rule for submitting evidence to the ALJ doesn't apply to rebuttal evidence. And so the appeals council is the last opportunity to cure surprise at the ALJ hearing. And so evidence can be submitted. The appeals council reverses and approximately 10% of the cases that adheres, which is a lower, but evidence contesting the BE wasn't submitted to the appeals council because it wasn't identified in the ALJ decision. And that's what the, that's what DHS versus regents talks about. It's not a useless formality. It's an important protection for procedural protection that claimants or people involved in the administrative process have that the reasons for the decision to be articulated in the four corners of the ALJ decision. Any questions by my count of my colleagues, judge Wallace, do you have any questions? I'm fine. Thank you. Thanks to both council for your argument. Very helpful. And the case just argued that part of it is for Reese versus all is submitted.
judges: Wallace, M. Smith, Restani